ACCEPTED
05-24-01220-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
8/20/2025 3:47 PM
RUBEN MORIN
CLERK

IN THE COURT OF APPEALS FOR THE

FIFTH DISTRICT OF TEXAS AT DALLAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
8/20/2025 3:47:00 PM
Ruben Morin
Clerk

| | | |
|---|---|---|
| **BALENTINE MUNOS**<br>Appellant<br><br>v.<br><br>**THE STATE OF TEXAS**<br>Appellee | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Nos. 05-24-01220-CR**<br>**05-24-01221-CR &**<br>**05-24-01222-CR** |

APPEAL FROM THE 296TH JUDICIAL DISTRICT COURT OF COLLIN COUNTY, TEXAS
THE HONORABLE RICHARD BEACOM, JUDGE PRESIDING

§§§

## STATE'S BRIEF

§§§

ORAL ARGUMENT
NOT REQUESTED

GREG WILLIS
Criminal District Attorney
Collin County, Texas

AMY MURPHY
Chief of Appellate Division
Assistant Criminal District Attorney
Collin County, Texas

ROBERT KOEHL
Assistant Criminal District Attorney
2100 Bloomdale Rd. Ste. 200
McKinney, Texas 75071
Phone: 972-548-4323
Fax: 214-491-4860
State Bar No. 24097948

## Corrected Identification of Parties

Appellee, the State of Texas, adopts Appellant's identification of parties and counsel, with the following corrections:

Appellate counsel for Appellee, the State of Texas, are Robert Koehl, Amy Murphy, and Greg Willis, 2100 Bloomdale Rd. Ste. 200 McKinney, TX 75071.

2

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

# Table of Contents

**Corrected Identification of Parties**......................................................................2

**Table of Contents** .......................................................................................................3

**Index of Authorities** ................................................................................................5

**Statement Regarding Oral Argument**.........................................................12

**Statement of the Case** .........................................................................................12

**Statement of the Facts**..........................................................................................12

**Summary of the Argument** ...............................................................................19

**Argument and Authorities** ................................................................................21

**I. Any error in the denial of a directed verdict for aggravated sexual assault was harmless because the jury acquitted Appellant of the charged offense.** ..........21

    **Additional Facts** ................................................................................................21

    **Applicable Law** .................................................................................................22

    **The Error Was Harmless**................................................................................22

**II. The evidence was legally sufficient to sustain Appellant's conviction for the lesser-included offense of indecency with a child.**..............................................24

    **Additional Facts** ................................................................................................24

    **Applicable Law – Legal Sufficiency**..............................................................25

    **The Proper Construction of "Genitals" Includes the Entire Pubic Area** .....26

    **The Evidence Was Sufficient** .........................................................................29

    **Appellant Relies on an Erroneous Statutory Construction**...........................29

**III. The evidence was legally sufficient to sustain Appellant's conviction for continuous sexual abuse of a child.**.........................................................................33

    **Additional Facts** ................................................................................................33

    **Standard of Review and Applicable Law** ......................................................34

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

The Evidence Was Sufficient ................................................................35

Appellant's Argument Overlooks the Cumulative Evidence ........................37

**IV. Appellant fails to demonstrate ineffective assistance of counsel because the record is silent as to trial counsel's strategy.**................................................39

Additional Facts ................................................................................39

Standard of Review and Applicable Law ............................................41

Counsel's Performance Was Not Deficient .........................................43

Appellant Cannot Demonstrate Prejudice .........................................49

**V. The denial of a mistrial was within the zone of reasonable disagreement because Appellant failed to demonstrate a discovery violation.**........................52

Additional Facts ................................................................................52

Standard of Review and Applicable Law – Mistrial ...........................53

Applicable Law – Discovery ...............................................................54

Appellant Failed to Preserve the Issue .............................................56

Appellant Failed to Develop a Record Sufficient for Review ............57

The Trial Court Did Not Err Because There Was No Discovery Violation..59

Appellant's Argument is Meritless......................................................62

**Prayer**...............................................................................................64

**Certificate of Service**.......................................................................65

**Certificate of Compliance**................................................................65

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

# Index of Authorities

Page

**Cases**

*Bass v. State*,
270 S.W.3d 557 (Tex. Crim. App. 2008) ....................................................45

*Balsley v. State,*
No. 01-10-00560-CR, 2012 WL 3041449
(Tex. App.—Houston July 26, 2012, no pet.)
(mem op., not designated for publication) ...............................................28-31

*Baugh v. State,*
No. 05-18-00523-CR, 2019 WL 3212135
(Tex. App.—Dallas July 9, 2019, no pet.)
(mem. op., not designated for publication) ...............................................36-38

*Bohannan v. State,*
546 S.W.3d 166 (Tex. Crim. App. 2017) ....................................................26

*Breckenridge v. State,*
40 S.W.3d 118 (Tex. App.—San Antonio, 2000, pet. ref'd) .........................27

*Brooks v. State,*
323 S.W.3d 893 (Tex. Crim. App. 2010) ................................................25, 34

*Calvin v. State,*
No. 03-09-00629-CR, 2011 WL 1562138
(Tex. App.—Austin Apr. 21, 2011, no pet.)
(mem. op., not designated for publication) ...............................................22-23

*Carmell v. State,*
331 S.W.3d 450 (Tex. App.—Fort Worth 2010, pet. ref'd) .....................28-31

*Clark v. State,*
558 S.W.2d 887 (Tex. Crim. App. 1977) .........................................27, 30-31

*Clinton v. State,*
354 S.W.3d 795 (Tex. Crim. App. 2011) ....................................................31

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

**Cases (cont'd)**

*Compton v. State,*
666 S.W.3d 685 (Tex. Crim. App. 2023) ........................................42-43, 49

*Cont'l Heritage Ins. Co. v. State,*
683 S.W.3d 407 (Tex. Crim. App. 2024) ......................................................27

*Dabney v. State,*
492 S.W.3d 309 (Tex. Crim. App. 2016) ................................................44-45

*David v. State,*
663 S.W.3d 673 (Tex. Crim. App. 2022) ................................................25, 34

*De La Paz v. State,*
279 S.W.3d 336 (Tex. Crim. App. 2009) ......................................................44

*Delrio v. State,*
840 S.W.2d 443 (Tex. Crim. App. 1992) ......................................................42

*Dunham v. State,*
666 S.W.3d 477 (Tex. Crim. App. 2023) ..........................................25, 34, 37

*Estraca v. State,*
No. 13-23-00482-CR, 2025 WL 339173,
(Tex. App.—Corpus Christi Jan. 30, 2025, no pet.)
(mem. op., not designated for publication) ......................................................60

*Ex parte Raborn,*
658 S.W.2d 602 (Tex. Crim. App. 1983) ......................................................42

*Fernandez v. State,*
No. 14-13-00376-CR, 2015 WL 778482
(Tex. App.—Houston [14th Dist.] Feb. 24, 2015, no pet.)
(mem. op., not designated for publication) ..............................................22-23

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

**Index of Authorities (cont'd)**

Page

**Cases (cont'd)**

*Finley v. State,*
No. 05-23-00420-CR, 2024 WL 4969955
(Tex. App.—Dallas Dec. 4, 2024, no pet.)
(mem. op., not designated for publication) ....................................................56

*Fisher v. State,*
No. 05-19-00851-CR, 2022 WL 2900968
(Tex. App.—Dallas July 22, 2022, pet. ref'd)
(mem. op., not designated for publication) ....................................................44

*Foyt v. State,*
602 S.W.3d 23 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) .............56

*Gallegos v. State,*
No. 08-23-00156-CR, 2024 WL 2836597
(Tex. App.—El Paso, June 4, 2024, no pet.)
(mem. op. not designated for publication) .................................................22-23

*Garcia v. State,*
614 S.W.3d 749 (Tex. Crim. App. 2019) ......................................................50

*Garcia v. State,*
57 S.W.3d 436 (Tex. Crim. App. 2001) ........................................................46

*Garner v. State,*
523 S.W.3d 266 (Tex. App.—Dallas 2017, no pet.) ......................................35

*Garza v. State,*
213 S.W.3d 338 (Tex. Crim. App. 2007) ......................................................45

*Glover v. State,*
496 S.W.3d 812 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) ............56

*Goodspeed v. State,*
187 S.W.3d 390 (Tex. Crim. App. 2005) ......................................................46

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

## Index of Authorities (cont'd)

Page

**Cases (cont'd)**

*Guzman v. State,*
539 S.W.3d 394 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) ..............60

*Hallman v. State,*
--- S.W.3d ---, No. PD-0332-22, 2025 WL 1812902
(Tex. Crim. App. 2025) (not yet published) ..........................54-56, 59, 62-63

*Hernandez v. State,*
556 S.W.3d 308 (Tex. Crim. App. 2017) ................................................26, 34

*Ingerson v. State,*
559 S.W.3d 501 (Tex. Crim. App. 2018) .....................................................25

*Johnson v. State,*
624 S.W.3d 579, 585 (Tex. Crim. App. 2021) ..............................................48

*Jones v. State,*
323 S.W.3d 885 (Tex. Crim. App. 2009) ......................................................27

*Jones v. State,*
850 S.W.2d 236 (Tex. App.—Fort Worth 1993, no pet.) .......................22-23

*Liverman v. State,*
470 S.W.3d 831 (Tex. Crim. App. 2015) .....................................................31

*London v. State,*
490 S.W.3d 503 (Tex. Crim. App. 2016) .....................................................58

*Lopez v. State,*
343 S.W.3d 137 (Tex. Crim. App. 2011) ................................................41-42

*Lopez-Martinez v. State,*
No. 05-21-00319-CR, 2022 WL 16706964
(Tex. App.—Dallas Nov. 4, 2022, no pet.)
(mem. op., not designated for publication) ...................................................37

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

**Index of Authorities (cont'd)**

Page

**Cases (cont'd)**

*Lujan v. State,*
      626 S.W.2d 854 (Tex. App.—San Antonio 1981, pet ref'd) ..........................30

*Merritt v. State,*
      368 S.W.3d 516 (Tex. Crim. App. 2012) ...............................................25, 37

*Meza v. State,*
      706 S.W.3d 914 (Tex. App.—Dallas 2024, pet. ref'd) ................................35

*Milton v. State,*
      --- S.W.3d ---, Nos. PD-0282-24 & PD-0283-24, 2025 WL 1812862
      (Tex. Crim. App. 2025) (not yet published) ..................................................26

*Mitchell v. State,*
      68 S.W.3d 640 (Tex. Crim. App. 2002) .........................................................43

*Minnis v. State,*
      No. 02-20-00027-CR, 2021 WL 62127
      (Tex. App.—Fort Worth Jan. 7, 2021, no pet.)
      (mem. op., not designated for publication) ...................................................36

*Ocon v. State,*
      284 S.W.3d 880 (Tex. Crim. App. 2009) .........................................53, 62-63

*Perez v. State,*
      No. 05-19-01225-CR, 2021 WL 869636
      (Tex. App.—Dallas Mar. 9, 2021, no pet.)
      (mem. op., not designated for publication) ...................................................38

*Robisheaux v. State,*
      483 S.W.3d 205 (Tex. App.—Austin 2016, pet. ref'd) ............................49-50

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

**Cases (cont'd)**

*Ruiz v. State,*
Nos. 14-23-00857-CR & 14-23-00859-CR, 2025 WL 1634787
(Tex. App.—Houston [14th Dist.] June 10, 2025, no pet. h.)
(mem op., not designated for publication) ....................................................57

*Salcido v. State,*
No. 07-10-00170-CR, 2011 WL 847010
(Tex. App.—Amarillo Mar. 11, 2011, pet ref'd)
(mem. op., not designated for publication) .............................................28-31

*Stafford v. State,*
813 S.W.2d 503 (Tex. Crim. App. 1991) .................................................45, 48

*State v. Gonzalez,*
855 S.W.2d 692 (Tex. Crim. App. 1993) ......................................................54

*State v. Heath,*
696 S.W.3d 677 (Tex. Crim. App. 2024) ...................................54-56, 59-63

*State v. Morales,*
253 S.W.3d 686 (Tex. Crim. App. 2008) (en banc) ......................................42

*State v. Vasilas,*
187 S.W.3d 486 (Tex. Crim. App. 2006) .......................................................32

*Strickland v. Washington,*
466 U.S. 688 (1984) ..................................................................41-43, 48-51

*Taylor v. State,*
630 S.W.3d 262 (Tex. App.—Eastland 2020, no pet.) ...........................22-23

*Thompson v. State,*
9 S.W.3d 808 (Tex. Crim. App. 1999) .............................................42, 45-46

*Thrift v. State,*
176 S.W.3d 221 (Tex. Crim. App. 2005) .......................................................50

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

## Index of Authorities (cont'd)

Page

**Cases (cont'd)**

*Tuazon v. State,*
    661 S.W.3d 178 (Tex. App.—Dallas 2023, no pet.) ...............................26, 38

*Valadez v. State,*
    663 S.W.3d 133 (Tex. Crim. App. 2022) .......................................................44

*Vaughn v. State,*
    931 S.W.2d 564 (Tex. Crim. App. 1996) ......................................................43

*Walker v. State,*
    594 S.W.3d 330, 336 (Tex. Crim. App. 2020) ........................................26-27

*Watkins v. State,*
    619 S.W.3d 265 (Tex. Crim. App. 2021) ..................................................54-56

*Wilson v. State,*
    71 S.W.3d 346 (Tex. Crim. App. 2002) .........................................................56

*Wishert v. State,*
    654 S.W.3d 317 (Tex. App.—Eastland 2022, pet. ref'd) ..............................37

**Statutes/Rules**

Tex. Code Crim. Pro. art. 38.07 ...............................................................26, 29, 35
Tex. Code Crim. Pro. art. 38.37 ...........................................................................39
Tex. Code Crim. Pro. art. 39.14 ......................................................................54-63
Tex. Gov't Code § 311.023 ...................................................................................32
Tex. Penal Code § 21.01 ................................................................................27, 32
Tex. Penal Code § 21.02 ................................................................................34-35
Tex. Penal Code § 21.11 ...........................................................................26, 28-32
Tex. Penal Code § 21.16 ................................................................................30, 32
Tex. Penal Code § 22.01 .......................................................................................49
Tex. Penal Code § 22.012 .....................................................................................49
Tex. R. Evid. 404 .............................................................................39-40, 44-45

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

## Statement Regarding Oral Argument

The State does not request oral argument.

## Statement of the Case

Appellant was charged by indictment with aggravated sexual assault of a child, continuous sexual abuse of a child, and indecency with a child by contact.[1] CR 1: 15; CR 2: 14; CR 3: 11; 3 RR 28-30. A Collin County jury found Appellant guilty of the lesser-included offense of indecency with a child by contact in the aggravated sexual assault case. 5 RR 93-94. The jury found him guilty as charged in the remaining continuous sexual abuse and indecency by contact cases. *Id*. at 94. The jury sentenced Appellant to 26 years' confinement for the continuous sexual abuse conviction and two years' confinement for each of the indecency convictions. *Id*. at 127. The trial court ordered that the sentences run concurrently.

## Statement of the Facts

Appellant sexually abused his granddaughter NM and her half-sister DS. Their mother (hereinafter Mother) was married to Appellant's son (NM's father) until February 2015. 3 RR 53, 56. When Mother separated from NM's father, NM

---

[1]"CR 1" refers to 05-24-01220-CR / 296-83511-2023 / Aggravated Sexual Assault / DS
"CR 2" refers to 05-24-01221-CR / 296-83512-2023 / Continuous Sexual Abuse / NM
"CR 3" refers to 05-24-01222-CR / 296-83513-2023 / Indecency by Contact / NM

12

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

was four years old and DS was approximately nine. *See id.* at 53, 107, 127, 140. Afterwards, NM and DS would continue to stay at Appellant's house on alternating weekends when NM's father would have visitation. *Id.* at 54-56. Appellant owned a house and some property in a rural portion of McKinney, and numerous members of his family stayed at his house and other places on this property. *Id.* at 48-51, 97, 230-40. Many of the adults had drug and alcohol problems. *Id.* at 52, 55-57, 236-37.

### *Appellant Abuses DS*

Even though DS was not related to Appellant by blood, she still viewed him as her grandfather, and he had long been the provider for their family. *See* 3 RR 51, 100. During one of the weekend visitations in 2015, Appellant sexually abused her. *See id.* at 101-13. DS would typically stay in NM's father's room during these visits. *Id.* at 104-05. She was sitting in the bed and using her tablet computer. *Id.* at 104, 109. Appellant came over to her, moved her tablet away, and touched her breast with his hand. *Id.* at 104, 109. Then he moved his hand down into her pants and touched her on her vaginal area with his hand and fingers. *Id.* at 104-05, 110-12. While moving his palm and fingers back and forth, he started kissing her. *Id.* at 112-13. Afterwards, he told her that if she ever told anyone about this, she would go to

13

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

jail. *Id.* at 113. DS stopped visiting Appellant's house in summer 2015 because she was not related to Appellant or his son. *Id.* at 54, 56, 115.

### *Appellant Abuses NM*

Appellant began abusing NM around 2017, when NM was six or seven years old. *See* 3 RR 150. The first time he abused her, it was during the summertime. *Id.* at 157, 219. She was on a computer watching YouTube videos when he called her into his room. *Id.* at 151. He asked her to lock the door behind her. He was naked. *Id.* at 158. He undressed her, picked her up by the armpits, and put her on the bed. *Id.* at 152, 158. While she was sitting on the bed with her legs hanging off, he stood in front of her and began rubbing her breasts. *Id.* at 152-53, 159-60. Then he moved his hands around to her back, glided them down her back, and moved to her vagina. *Id.* at 152-53, 160-61. At that point, he started rubbing up and down on her vagina with his palm and his fingers. *Id.* at 152-53, 161-62. Afterwards, he instructed her to go get a shower. *Id.* at 153, 163.

This happened again on at least three other occasions. 3 RR 164 (NM remembers four specific incidents), 225 (same). It did not happen on every visit, but only on those visitations where NM's father was not at home. *See id.* at 164, 182. On either the second or third time Appellant abused her, NM tried to wiggle away,

14

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

but he pushed her down on the bed and told her to stop moving—then he continued to touch her vagina. *Id.* at 174-76. One of the earlier incidents ended when NM's cousin knocked on the door while Appellant was touching her. *Id.* at 172-74.

In one instance, Appellant was wearing a towel when the abuse began, and he threatened to "make it worse" if NM ever told anyone. *Id.* at 170-71, 178, 180. In the last abuse incident, Appellant asked her to touch his naked penis. *Id.* at 166, 173. So she touched his penis with her hand before he began touching her vagina. *Id.* at 167-70. The abuse stopped sometime after the summer was over. *Id.* at 177. Later, NM suspected Appellant was abusing one of her little cousins because the cousin would sometimes be in Appellant's room taking a shower. *Id.* at 191.

### *Appellant's Inappropriate Conduct Towards MM*

Around that same time, there was an incident where Appellant exhibited inappropriate sexual conduct towards NM's older cousin MM. MM was 11 or 12 when this incident occurred. 3 RR 242. She had just finished doing her hair and making a sandwich. *Id.* at 245. Appellant came into the room made a comment about how he did not have a girlfriend. *Id.* at 246, 249-50; 4 RR 161. MM replied, "It's okay, Grandpa, I don't have a boyfriend." 3 RR 246, 249-50; 4 RR 161. Appellant responded by telling MM that he was going to teach her how to kiss boys.

15

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

3 RR 246, 250. So he sat down next to her, took her hand, and started kissing and licking it. *Id*. at 246, 251. Then he put his hand on her shoulder, and started kissing and licking her ear. *Id*. at 246, 254-55. She got up and left the room. *Id*. at 246. Appellant instructed her not to tell anyone about it. *Id*. at 246.

MM retreated to her room and called her brother to tell him what had happened. 3 RR 257. He told her to call their mother, so she did. *Id*. at 258-59. MM's mother told her to get out of the house and come to her place on the family property. *Id*. at 259. So MM fled Appellant's house and ran home to her mother's house, which was at another location on the family's property. *Id*. at 261. When she got home, her mother told her to keep quiet about what happened otherwise Appellant would end up in prison. *Id*. at 261-63. Nevertheless, MM's brother told one of his teachers at school what happened, and the teacher reported it to CPS. *Id*. at 268. The family instructed MM to lie to CPS and deny the abuse, which she did in a 2019 forensic interview. *Id*. at 269-70.

### *DS's Outcry*

DS finally outcried in October 2020 when she was 14 years old, approximately five years after the abuse. 3 RR 58-59, 62, 117. Mother was watching a sexual abuse awareness video on YouTube and told DS that if anything ever

16

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

happened to her, she would need to tell. *Id*. at 115. DS told her what Appellant had done to her, despite being terrified that she would go to jail in accordance with Appellant's threat. *Id*. at 116. Mother called CPS, but the case was subsequently closed. *Id*. at 60.

### MM's and NM's Outcries

After DS's outcry, NM's parents changed their visitation agreement so that all visitation between NM and her father would occur at public places—never at Appellant's house. 3 RR 63. But Appellant would still be at some of these visitations. *Id*. at 193-94. The last visitation between NM and her father took place in February 2023. *Id*. at 67. Around that time, MM called Mother "out of the blue" to say that she had moved out of the house because of what Appellant had done to her. *Id*. at 71. NM later learned of DS's outcry from Mother. 3 RR 199. This led NM to tell DS about what Appellant had done to her. *Id*. at 118, 201-02. DS instructed NM to tell Mother. *Id*. at 119, 203.

Just before a visitation in April 2023 was scheduled to occur, NM asked Mother if Appellant was going to be at the visitation. 3 RR 68. Mother responded that he probably would be, since he had been at the last couple. *Id*. NM responded that she did not want to go if Appellant was there, and then she outcried. *Id*. at 69.

17

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

Mother took DS, NM, and MM to the Collin County Sheriff's Office on April 29, 2023. 3 RR 69, 73, 87-88. All three children were then forensically interviewed at the Collin County Children's Advocacy Center. *Id*. at 74. All three children made outcries. 4 RR 98, 102.

Appellant was charged with aggravated sexual assault of a child for abusing DS. He was charged with continuous sexual abuse of a child for his repeated touching of NM's genitals and the incident where he forced her to touch his penis. He was charged with indecency with a child by contact for touching NM's breast.

At trial, Appellant testified. He claimed that there were many CPS and law enforcement calls out to his residence to investigate various family members, but the calls were never about him. 4 RR 154. He denied abusing DS. *Id*. at 156, 159. He denied abusing NM. *Id*. at 159-60. He admitted to having the conversation with MM where he complained about not having a girlfriend and she responded that she did not have a boyfriend. *Id*. at 161. But he denied anything sexual happening. *Id*. at 162.

18

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

## Summary of the Argument

### *Reply to Appellant's First Issue*

In his first issue, Appellant argues that the trial court erred by denying his motion for a directed verdict in the aggravated sexual assault case because the evidence was insufficient to prove penetration. He argues that the evidence only proved that he touched, rather than penetrated, DS's genital area. The trial court's denial was harmless because the jury acquitted Appellant of aggravated sexual assault of a child.

### *Reply to Appellant's Second Issue*

In his second issue, Appellant argues that the term "genitals" does not include the pubic area, so touching DS "where the hair grows" immediately above the flaps of her vagina was legally insufficient to show that he touched "any part" of her genitals. Multiple courts have properly construed the phrase "any part of the genitals" to encompass the entire pubic area.

### *Reply to Appellant's Third Issue*

In his third issue, Appellant argues that the evidence is legally insufficient to prove the 30-day duration element for continuous sexual abuse of a child. Evidence showed that Appellant abused NM on four different occasions during custody

19

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

visitations that only occurred on alternating weekends. Evidence also showed the abuse began in the summer and ended after summer was over.

### Reply to Appellant's Fourth Issue

In his fourth issue, Appellant claims that trial counsel was constitutionally ineffective for allowing MM to testify without objection regarding extraneous conduct. The testimony was admissible. Even if it were not, the record is silent on trial counsel's strategy, and it is clear that the decision to permit the testimony was intentional—it was not an oversight. The decision is not so outrageous that it constitutes deficient performance as a matter of law. Appellant cannot demonstrate prejudice.

### Reply to Appellant's Fifth Issue

In his fifth issue, Appellant argues that the trial court abused its discretion by denying his motion for a mistrial after he alleged a discovery violation. The issue is unpreserved because Appellant's motion was untimely. He failed to develop a sufficient record for this Court to determine whether a discovery violation actually occurred. He failed to demonstrate a discovery violation to the trial court. He also failed to demonstrate incurable prejudice.

20

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

## Argument and Authorities

## I. Any error in the denial of a directed verdict for aggravated sexual assault was harmless because the jury acquitted Appellant of the charged offense.

In his first issue, Appellant argues that the trial court abused its discretion by denying his motion for a directed verdict in the aggravated sexual assault case. Appellant's Br. 20. Specifically, he argues that there was no evidence of penetration to prove the offense of aggravated sexual assault of a child. *Id.* Any error in the denial of the directed verdict was harmless because the jury acquitted Appellant of aggravated sexual assault of a child and convicted him of the lesser-included offense of indecency with a child by contact.

## Additional Facts

Appellant was charged with aggravated sexual assault of a child for abusing DS. *See* 3 RR 28. After the State rested at trial, Appellant motioned for a directed verdict because *inter alia* the evidence did not prove penetration. 4 RR 120-21. The trial court denied the motion. *Id*. at 121. At the close of trial, the jury acquitted Appellant of the charged offense but convicted him of the lesser-included offense of indecency with a child by contact. 5 RR 93-94.

21

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

## Applicable Law

The erroneous denial of a directed verdict on a particular offense is harmless beyond a reasonable doubt when the jury acquits the defendant of that offense and convicts the defendant on a lesser-included offense instead. *Taylor v. State*, 630 S.W.3d 262, 263 (Tex. App.—Eastland 2020, no pet.) (citing *Jones v. State*, 850 S.W.2d 236, 239 (Tex. App.—Fort Worth 1993, no pet.)) ("Any error in failing to grant a directed verdict on a particular offense is harmless beyond a reasonable doubt when the jury did not find the defendant guilty of that offense."); *see also Gallegos v. State*, No. 08-23-00156-CR, 2024 WL 2836597, at *3 (Tex. App.—El Paso, June 4, 2024, no pet.) (mem. op. not designated for publication); *Fernandez v. State*, No. 14-13-00376-CR, 2015 WL 778482, at *7 (Tex. App.—Houston [14th Dist.] Feb. 24, 2015, no pet.) (mem. op., not designated for publication); *Calvin v. State*, No. 03-09-00629-CR, 2011 WL 1562138, at *7 (Tex. App.—Austin Apr. 21, 2011, no pet.) (mem. op., not designated for publication).

## The Error Was Harmless

Appellant argues, as he did before the trial court, that the State failed to present sufficient evidence to prove penetration as required to convict him of aggravated sexual assault of a child. Appellant's Br. 20; 4 RR 121. The jury apparently agreed

22

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

and convicted him of the lesser-included offense of indecency with a child by contact instead.  5 RR 93-94.

Because the jury did not find Appellant guilty of aggravated sexual assault of a child, the trial court's denial of a directed verdict on that offense was harmless beyond a reasonable doubt.  *Taylor*, 630 S.W.3d at 263; *Jones*, 850 S.W.2d at 239; *Gallegos*, 2024 WL 2836597 at *3; *Fernandez*, 2015 WL 778482 at *7; *Calvin*, 2011 WL 1562138 at *7.  The fact that the jury went on to convict him of a lesser-included offense does not render the denial harmful.  *Calvin*, 2011 WL 1562138 at *7.  Accordingly, this Court should overrule Appellant's first issue and affirm the trial court's judgment in Cause No. 05-24-01220-CR.

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

## II. The evidence was legally sufficient to sustain Appellant's conviction for the lesser-included offense of indecency with a child.

In his second issue, Appellant argues that the evidence was legally insufficient to support a conviction for the lesser-included offense of indecency with a child by contact in the aggravated sexual assault case with DS. Appellant's Br. 20-21.[2] Specifically, he argues that touching the pubic area does not constitute touching "any part of the genitals." *Id*. at 21. Accordingly, he claims that DS's testimony that Appellant touched her on the skin where the "hair grows" directly above her vagina was legally insufficient to prove the offense. *Id*. Appellant's proposed construction of the term "genitals" contradicts the rulings of prior courts that have considered and rejected his position. Appellant fails to address these adverse decisions.

### Additional Facts

When DS testified about the abuse, she first described Appellant's contact with her genitals as "not where the flaps are, but, like, towards the top part." 3 RR 104-05. She also described him as touching her on "[t]he part where like hair grows, but not where the flaps are." *Id*. at 111. She also stated that she could feel on her

---

[2] Appellant erroneously mislabels his second issue as his third issue in the argument section of his brief. Appellant's Br. 20.

24

---

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

vagina where his hand was. *Id*. at 112. She later clarified that the touch was on the skin immediately above the vagina. *Id*. at 142.

## Applicable Law – Legal Sufficiency[3]

Evidence is legally sufficient if a rational trier of fact could have found each element of the offense beyond a reasonable doubt. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022). In reviewing legal sufficiency, this Court examines all of the evidence in the light most favorable to the verdict. *Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023). Each fact need not point directly and independently to guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id*. The fact-finder is the exclusive judge of the credibility/weight of the evidence and may draw any reasonable inference from the evidence. *David*, 663 S.W.3d at 678. This Court does not re-evaluate the weight or credibility of the evidence or substitute its judgment

---

[3] Appellant provides this Court with an erroneous statement of the law by incorporating portions of the defunct *factual* sufficiency standard that the Texas Court of Criminal Appeals abolished fifteen years ago. *See* Appellant's Br. 16-19; *Brooks v. State*, 323 S.W.3d 893, 812 (Tex. Crim. App. 2010) (abolishing factual sufficiency). He also erroneously invites the court to consider "alternative reasonable hypotheses" when reviewing sufficiency. Appellant's Br. 24. The Texas Court of Criminal Appeals has long rejected this type of analysis. *See Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018) ("Focusing on other reasonable explanations for evidence improperly applies the abrogated reasonable-alternative-hypothesis construct."); *Merritt v. State*, 368 S.W.3d, 516, 527 (Tex. Crim. App. 2012) (to analyze reasonable alternative hypothesis erroneously repudiates the jury's prerogative to choose between conflicting theories of the case).

---

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

for that of the fact-finder. *Tuazon v. State*, 661 S.W.3d 178, 181 (Tex. App.—Dallas 2023, no pet.) (citing *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017)).

This Court measures legal sufficiency by comparing the evidence to the offense's elements under a "hypothetically correct jury charge" which accurately sets out the law, is authorized by the indictment, does not increase the State's burden, and adequately describes the offense. *Hernandez v. State*, 556 S.W.3d 308, 312 (Tex. Crim. App. 2017). A person commits indecency with a child by contact if, with intent to arouse or gratify the sexual desires of any person, he touches any part of the child's genitals. Tex. Penal Code §§ 21.11(a)(1) & (c)(1). A child victim's testimony alone is sufficient to support a conviction for indecency with a child. Tex. Code Crim. Pro. art. 38.07.

**The Proper Construction of "Genitals" Includes the Entire Pubic Area**

Evidence's legal sufficiency sometimes depends on the meaning of the statute under which a defendant is prosecuted. *Milton v. State*, --- S.W.3d ---, Nos. PD-0282-24 & PD-0283-24, 2025 WL 1812862, *2 (Tex. Crim. App. 2025) (not yet published) (citing *Walker v. State*, 594 S.W.3d 330, 336 (Tex. Crim. App. 2020)). When, as here, an appellant presents a statutory construction argument as the

26

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

cornerstone of a legal sufficiency claim, this Court first interprets the statute, then determines whether the appellant's conduct constitutes an offense under the statute as interpreted. *Walker*, 594 S.W.3d at 336. In such cases, this Court must interpret a statute's text in accordance with its plain meaning unless the text is ambiguous or leads to an absurd result that the legislature could not have possibly intended. *Cont'l Heritage Ins. Co. v. State*, 683 S.W.3d 407, 411 (Tex. Crim. App. 2024). This Court also considers any prior judicial construction of the statute's text. *Jones v. State*, 323 S.W.3d 885, 888 (Tex. Crim. App. 2009). A prior judicial construction is the law unless the Texas Court of Criminal Appeals overrules it. *Id*. at 888-89.

The statutory term at issue in the instant case is "genitals." The term is not statutorily defined. *See* Tex. Penal Code § 21.01. But the term has acquired an established legal meaning from prior judicial constructions. *See Breckenridge v. State*, 40 S.W.3d 118, 123 (Tex. App.—San Antonio, 2000 pet. ref'd).

The Texas Court of Criminal Appeals analyzed the term in *Clark v. State*, 558 S.W.2d 887 (Tex. Crim. App. 1977). There, an appellant argued that the term only included the vagina and no other part of a female's genital area. *Id*. at 889. The Texas Court of Criminal Appeals rejected that argument since the statute prohibits touching "any part" of the genitals, which includes more than just the vagina. *Id*.

27

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

The Texas Court of Criminal Appeals specifically stated that the definition also includes the vulva. *Id*.

The Fort Worth court later determined that the term encompasses the entire genital area and pubic hair. *Carmell v. State*, 331 S.W.3d 450, 460 (Tex. App.— Fort Worth 2010, pet. ref'd) (touching "pubic hair" or "genital area" sufficient to establish contact with "genitals" for the purpose of § 21.11). Other Texas courts have similarly determined that the term "genitals" includes the entire pubic area. *Balsley v. State*, No. 01-10-00560-CR, 2012 WL 3041449, at *6 (Tex. App.— Houston [1st Dist.] July 26, 2012, no pet.) (mem. op., not designated for publication) ("We add that the evidence was also sufficient to establish that he touched any part of [the victim's] genitals by touching her pubic hair."); *Salcido v. State*, No. 07-10-00170-CR, 2011 WL 847010, at *3 (Tex. App.—Amarillo Mar. 11, 2011, pet ref'd) (mem. op., not designated for publication) (touching pubic hair is sufficient to prove indecency because "[t]he pubic area is part of the vulva").

As such, the proper construction of "any part of a child's genitals" includes the entire genital area and pubic hair. Accordingly, touching any part of a child's pubic area is sufficient to establish the element of touching a child's genitals under

28

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

Tex. Penal Code § 21.11. *Carmell*, 331 S.W.3d at 460; *Balsley*, 2012 WL 3041449 at *6; *Salcido*, 2011 WL 847010 at *3

## The Evidence Was Sufficient

In the present case, DS testified to the abuse. Specifically, she stated that Appellant put his hand under her pants on top of her underwear. *Id*. at 111-12. She described the exact location on her body as "where like hair grows" and just "above where the flaps are" on her vagina. *Id*. at 104-05, 111. She later described the location as being the skin immediately above her vagina. *Id*. at 141-42. This was sufficient to show sexual contact.[4] *See Carmell*, 331 S.W.3d at 460 ("genitals" encompasses the "pubic hair" and "genital area" for purposes of the statute); *Balsley*, 2012 WL 3041449 at *6; *Salcido*, 2011 WL 847010 at *3. Accordingly, her testimony alone was sufficient for the jury to find him guilty beyond a reasonable doubt. Tex. Code Crim. Pro. art. 38.07 (child victim's testimony alone is sufficient).

## Appellant Relies on an Erroneous Statutory Construction

Appellant claims that the evidence was insufficient, arguing that the pubic area is not "any part of the genitals." Appellant's Br. 20-21. To support his faulty

---

[4] Appellant's argument on this issue is limited to whether the area he touched was "any part of the genitals." Appellant's Br. 20-21. Accordingly, the State limits its discussion of the evidence's sufficiency to this element of the offense.

29

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

construction of the term "genitals," he relies on: (1) the San Antonio court's decision in *Lujan v. State*, 626 S.W.2d 854, 859 (Tex. App.—San Antonio 1981, pet. ref'd); and (2) the definition of "intimate parts" in the unlawful disclosure of intimate visual material statute at Tex. Penal Code § 21.16. *Id*. at 21.

Appellant relies on the San Antonio court's decision *Lujan* for the proposition that "[t]he genitalia as defined by Texas courts encompasses the vulva along with the vagina" and does not include the pubic area. Appellant's Br. 21. His reliance is misplaced because *Lujan* did not limit the definition of "genitals," but rather recognized that the Texas Court of Criminal Appeals noted in *Clark* that it included more than just the vagina. *Lujan*, 626 S.W.2d at 858-59. Nothing in *Lujan* suggests excluding the pubic area from the definition of "genitals" for the purpose of § 21.11. Indeed, stating that the definition encompasses more than just the vagina (and specifically includes the vulva) does not necessarily limit the definition. Further, the Amarillo Court later determined (after consulting Gray's Anatomy of the Human Body) that the "pubic area is part of the vulva." *Salcido*, 2011 WL 847010 at *3. *Lujan* simply does not support Appellant's argument—particularly in light of subsequent case law that recognizes the entire pubic area as part of the genitals. *See*

30

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

*Carmell*, 331 S.W.3d at 460; *Balsley*, 2012 WL 3041449 at *6; *Salcido*, 2011 WL 847010 at *3.

Appellant also argues that the legislature's listing of both "naked genitals" and "pubic area" as "intimate parts" in the unlawful disclosure statute indicates a legislative intent to exclude the pubic area from the definition of "genitals." *Id*. This argument misapplies the canons of statutory construction. Ordinarily, a court only looks to the wording of other statutes when the language at bar is ambiguous, it has not acquired a particular meaning, or imposing its plain meaning would lead to an absurd result. *See Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015); *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011). "Genitals" is not an ambiguous word that requires this Court to discern its meaning based on how other statutes use it. The term has already acquired an established legal meaning. *See Clark*, 558 S.W.2d at 889, *Carmell*, 331 S.W.3d at 460; *Salcido*, 2011 WL 847010 at *3. That legal meaning, for the purpose of § 21.11, includes the entire genital area and anything covered by pubic hair. *See Carmell*, 331 S.W.3d at 460; *Balsley*, 2012 WL 3041449 at *6; *Salcido*, 2011 WL 847010 at *3. So this Court need not consider other statutes to determine which body parts the term encompasses.

31

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

Even if the Court were to consider the unlawful disclosure statute, the mere listing of "naked genitals" and "pubic area" as "intimate parts" in the unlawful disclosure statute does not suggest that the legislature intended to exclude the pubic area from "any part of the genitals" in the indecency statute. *See generally*, Tex. Gov't Code § 311.023 (consideration of legislative intent). The unlawful disclosure statute criminalizes the disclosure of visual material depicting a person's "intimate parts." *See* Tex. Penal Code § 21.16(b). It does not purport to define "genitals." If the legislature wanted to define "genitals," it would have amended § 21.01 or 21.11. *See State v. Vasilas*, 187 S.W.3d 486, 489 (Tex. Crim. App. 2006) (if the legislature enacted something different than intended, it would amend the statute). It would not bury the definition in a questionable reading of an unrelated statute.

Because the proper definition of "genitals" encompasses the entire pubic area, and the evidence established that Appellant touched DS's pubic area, the evidence was legally sufficient. This Court should overrule Appellant's second issue and affirm the trial court's judgment in Cause No. 05-24-01220-CR.

32

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

**III. The evidence was legally sufficient to sustain Appellant's conviction for continuous sexual abuse of a child.**

In his third issue, Appellant argues that the evidence was legally insufficient to support his conviction for continuous sexual abuse of a child against NM. Appellant's Br. 21-26. Specifically, he argues that the evidence was insufficient to show that the abuse incidents occurred over a period of 30 days or more. *Id*. at 25-26. The evidence was sufficient because NM's and Mother's combined testimony gave the jury sufficient benchmarks from which to infer without speculation that the first and last incidents were 30 or more days apart.

**Additional Facts**

Mother testified that she left NM's father in 2015, when NM was approximately four years old. 3 RR 53. Afterwards, NM would do visitations at Appellant's house on alternating weekends for the next five years until DS's outcry. *Id*. at 56, 63. NM testified that Appellant began abusing her when she was six or seven years old (around 2017). *Id*. at 154. Appellant touched NM on her vagina with his hand while naked on at least four occasions during her weekend visitations. *Id*. at 151-82, 225. These instances of abuse only occurred on visitations where NM's father was not home. *Id*. at 164, 182. They began in the summertime, but ended at some point after summer was over. *Id*. at 157, 177, 219-20.

33

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

**Standard of Review and Applicable Law**

Evidence is legally sufficient if a rational jury could have found each element of the offense beyond a reasonable doubt, considering all properly and improperly admitted evidence in the light most favorable to the verdict. *Dunham*, 666 S.W.3d at 482; *David*, 663 S.W.3d at 678; *Balderas*, 517 S.W.3d at 766. When reviewing legal sufficiency, this Court defers to the jury's role as the sole judge of the evidence's weight/credibility and the jury's right to draw any reasonable inferences that the evidence supports. *Brooks*, 323 S.W.3d at 899; *David*, 663 S.W.3d at 678. When the record supports conflicting inferences, this Court presumes the jury resolved any conflicts in favor of the verdict, and defers to that determination. *Dunham*, 666 S.W.3d at 482. This Court compares the evidence to the offense's elements under a "hypothetically correct jury charge" that sets out the law as authorized by the indictment without increasing the State's burden of proof or restricting the theories of liability, while adequately describing the offense. *Hernandez*, 556 S.W.3d at 312.

A person commits continuous sexual abuse of a child if: (1) during a period of 30 or more days; (2) the actor commits two or more acts of sexual abuse; (3) the actor is 17 or older; and (4) the victim is younger than 14. Tex. Penal Code 21.02(b).

34

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

Indecency with a child by contact is an act of sexual abuse that will support a continuous sexual abuse of a child charge. *Id*. at § 21.02(c)(2). The child victim's testimony alone is sufficient to support a conviction for continuous sexual abuse of a child. *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.); Tex. Code Crim. Pro. art. 38.07.

To determine whether the evidence is sufficient to prove that the offense occurred over a period of 30 or more days, this Court considers benchmarks in the child's testimony, such as the number of abuses and the victim's age when the abuses occurred. *Meza v. State*, 706 S.W.3d 914, 922 (Tex. App.—Dallas 2024, pet. ref'd).

## The Evidence Was Sufficient

The sole contested element in Appellant's third issue is duration: whether the State proved that the first and last abuse incidents were more than 30 days apart. Appellant's Br. 21-26. In the light most favorable to the verdict, a rational jury could easily infer that more than thirty days elapsed between the first and last incidents based on Mother's and NM's combined testimony.

Initially, the jury could reasonably infer that the four instances of abuse were separated by at least two weeks each. Mother testified that NM's visitations only occurred every other weekend. 3 RR 56. This means that at least two weeks

35

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

separated each visitation. NM then testified to four distinct instances of abuse that occurred on visitations when her father was not present. *Id*. at 164, 182, 225. Separating the four instances of abuse by two weeks between each incident, the abuse would have gone on for at least 60 days. Accordingly, there would be well more than 30 days between the first and last incidents of abuse. *Baugh v. State*, No. 05-18-00523-CR, 2019 WL 3212135, at *3 (Tex. App.—Dallas July 9, 2019, no pet.) (mem. op., not designated for publication) (reasonable to infer minimum of 60 days from four abuse instances separated by at least two weeks each). As such, NM's and Mother's combined testimony sufficiently proved the duration element.[5]

Additionally, NM testified that the first instance occurred in the summertime. 3 RR 157, 219.[6] She then testified that it was no longer summertime when the last abuse incident occurred. *Id*. at 177, 220 ("It was no longer summer, but I don't know, like, if it was winter, like, maybe like September or something like that.").

---

[5] The record reflects that NM's father was frequently absent and the abuse only occurred when he was not present. *See* 3 RR 149, 164, 181-82. But there is no testimony as to which visitations he actually missed. The abuse would occur over a 60-day period if it was on four *consecutive* visitations. It would be much longer if father's absence were interspersed among the visitations. Accordingly, the testimony established a *minimum* of 60 days.

[6] Texas courts have recognized that "summer" in the parlance of a child means the three months that school is out from June to August. *See Minnis v. State*, No. 02-20-00027-CR, 2021 WL 62127, at *6 (Tex. App.—Fort Worth Jan. 7, 2021, no pet.) (mem. op., not designated for publication).

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

This also supports the reasonable inference that the abuse incidents were more than 30 days apart. *Wishert v. State*, 654 S.W.3d 317, 329 (Tex. App.—Eastland 2022, pet. ref'd) (evidence sufficient when abuse began in summer and continued into school year); *see* also *Lopez-Martinez v. State*, No. 05-21-00319-CR, 2022 WL 16706964, at *3 (Tex. App.—Dallas Nov. 4, 2022, no pet.) (mem. op., not designated for publication) (sufficient when acts occur in different seasons).

Considered as a whole, the evidence was sufficient for a rational jury to conclude that the first and last abuse incidents were more than 60 days apart, which is far more than the 30 days necessary to convict Appellant. *See Baugh*, 2019 WL 3212135 at *3. For these reasons, this Court should overrule Appellant's third issue and affirm the trial court's judgment.

### Appellant's Argument Overlooks the Cumulative Evidence

Appellant's argument focuses on NM's inability to testify to a specific timeframe. Appellant's Br. 25-26. But the issue is not whether NM's testimony alone could establish the 30-day timeframe. The issue whether all of the evidence combined could do so. *Dunham*, 666 S.W.3d at 482 (focus is on cumulative force of evidence); *Merritt*, 368 S.W.3d at 526 (eschewing a "divide-and-conquer" approach to sufficiency review). NM's testimony of four distinct instances during

37

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

visitation weekends combined with Mother's testimony that visitation only occurred every other weekend was sufficient to prove more than 30 days between the first and last incident. *See* 3 RR 53-56, 164, 225; *Baugh*, 2019 WL 3212135 at *3.

Appellant also argues that "[t]he uncertainty surrounding [NM]'s testimony and her inability to remember factual details of the incidents support conclusions reached by speculation." Appellant's Br. 26. This argument invites the Court to re-evaluate the weight and credibility of NM's testimony, which this Court does not do. *Tuazon*, 661 S.W.3d at 181. NM testified about the four acts of abuse that she could clearly recall. 3 RR 151-82. The jury was well aware of her inability to recall certain details. Indeed, she was a 13-year-old child testifying about events that occurred when she was six or seven. *Id*. at 144, 154. Nevertheless, the jury chose to convict, indicating they believed her testimony. *Perez v. State*, No. 05-19-01225-CR, 2021 WL 869636, at *5 (Tex. App.—Dallas Mar. 9, 2021, no pet.) (mem. op., not designated for publication) (". . . by returning a guilty verdict, we must infer that the jury believed [the victim's] testimony regarding [the appellant's] sexual abuse."). This Court should overrule Appellant's third issue, affirm the trial court's judgment in Cause No. 05-24-01221-CR, and decline Appellant's implied invitation to second-guess the jury.

38

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

**IV. Appellant fails to demonstrate ineffective assistance of counsel because the record is silent as to trial counsel's strategy.**

In his fourth issue, Appellant argues that his counsel was constitutionally deficient for not objecting to extraneous offense evidence. The evidence was admissible. The record is silent on counsel's strategy. Appellant cannot overcome the presumption that counsel's decision to permit evidence without objection was tactical, and part of a sound legal strategy. Appellant cannot show prejudice.

**Additional Facts**

In its initial written notice of extraneous offenses, the State announced its intent to introduce nearly two dozen extraneous matters, including evidence that Appellant "kissed [MM] on her mouth when she was under seventeen years of age" during its case in chief. CR 1: 49-51; CR 2: 48-50; CR 3: 47-49. Prior to opening statements, the trial court held a hearing on the State's extraneous evidence proffers. 3 RR 5-22. During this hearing, the State abandoned its intent to introduce evidence of Appellant's conduct towards MM under Article 38.37. *Id*. at 7 (abandoning "Subsection J"). The State proceeded to proffer evidence of Appellant's improper conduct towards MM under Rule 404(b) instead. 3 RR 11-22. MM testified at this hearing that Appellant exhibited inappropriate conduct towards her when she was 11 or 12 years old. *Id*. at 14, 16. She was in the living room when Appellant started

39

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

saying that he did not have a girlfriend. *Id*. at 14, 16, 19. MM told him that she did not have a boyfriend either. *Id*. at 14, 17, 19-20. So Appellant responded that he wanted to "teach" MM "how to kiss a boy." *Id*. at 17, 20. He proceeded to kiss and lick her on her hand and ear. *Id*. at 15-17, 20. Afterwards, he instructed her not to tell anyone. *Id*. at 16, 21. At the end of the hearing, the trial court accepted the proffer and agreed to hear any argument on Rule 404(b) at a later time. *Id*. at 21-22.

MM later testified before the jury, and described the same events as she had described in the hearing. *Id*. at 230-70. When MM testified, Appellant did not assert an objection under Rule 404. Instead, he attempted to discredit MM during cross-examination by insinuating her testimony contradicted earlier versions of the events:

> **Appellant**: Okay. And you'd agree that in 2019 you stated, I guess -- so to clarify, yesterday when you were testifying, you were saying that he began kissing the back of your hand and licking the back of your hand, and then he went up to your cheek or ear –
>
> **MM**: No, I did not say that. I said that he went to the back of my hand. He stopped. Went to my ear.
>
> **Appellant**: Okay. So he was kissing and licking the back of your hand?
>
> **MM**: Yes.
>
> **Appellant**: And then he was kissing and licking your ear?
>
> **MM**: Yes.

40

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

**Appellant**: And do you remember in the 2019 forensic interview that you were not describing it as the back of your hand, and you were describing it as your arm and kind of pointing in this area?

**MM**: Again, I was 13 years old. I had just been through a traumatic event, and it was scary for me to go against my family. And I -- I -- especially going through trauma like that, I had blackouts, like I'd black out from my trauma because I had been through so much. I forget where I am for at least ten seconds because of my PTSD. So I don't recall most information because it was super traumatic for me.

**Appellant**: That makes it hard to keep your story straight then, right?

**MM**: I mean, you remember something that happened five years ago, maybe six, and tell me how you -- tell me about it in detail right up here.

4 RR 70-71. He also tried to discredit her by pointing out that she wants to get the other children away from Appellant, she brought a note to her interview, and her mother accused her of lying. *Id*. at 64-70.

Appellant later testified and admitted to the conversation where he told MM that he did not have a girlfriend and she responded, "It's okay grandpa. I don't have a boyfriend." *Id*. at 161-62. But he denied anything sexual happening. *Id*. at 162-64.

### Standard of Review and Applicable Law

A criminal defendant enjoys a Sixth Amendment right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 688, 694 (1984); *Lopez v.*

41

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

*State*, 343 S.W.3d 137, 142-44 (Tex. Crim. App. 2011). Assistance is ineffective when: (1) counsel's performance is deficient; and (2) the deficient performance prejudices the defense. *Strickland*, 466 U.S. at 674; *Compton v. State*, 666 S.W.3d 685, 714 (Tex. Crim. App. 2023).

Courts determine whether a defendant has received effective assistance by the totality of the representation, rather than isolated acts or omissions of trial counsel. *See Ex parte Raborn*, 658 S.W.2d 602, 605 (Tex. Crim. App. 1983). It is the defendant's burden to prove ineffective assistance by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Courts presume that trial counsel made all significant decisions in the exercise of reasonable professional judgment. *See Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992). An ineffectiveness allegation must overcome the strong presumption that counsel's conduct was constitutionally adequate, within the wide range of reasonably professional assistance, and was the result of sound trial strategy or tactical decision. *See Strickland*, 466 U.S. at 689; *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (en banc). An ineffective assistance claim must be firmly founded in the record to overcome this presumption. *Thompson*, 9 S.W.3d at 814.

42

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

## Counsel's Performance Was Not Deficient

Appellant cannot satisfy the first prong of *Strickland* by demonstrating deficient performance. Performance is deficient when counsel made such serious errors as to not be functioning as the "counsel" guaranteed by the Sixth Amendment. *Compton*, 666 S.W.3d at 714. In other words, counsel's actions do not meet the objective norms for professional conduct. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Here, the record does not demonstrate deficient performance because: (1) the disputed testimony was admissible; and (2) the record is silent regarding trial counsel's strategy.

### 1. The Disputed Evidence Was Admissible

Counsel cannot be ineffective by failing to make a meritless objection. *Compton*, 666 S.W.3d at 731. Allegations of deficient performance for failing to object require an appellant to demonstrate: (1) the evidence was inadmissible, and (2) the objection would have been granted. *See Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002). Essentially, he must prove that the trial court would have erred by overruling the objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).

43

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

Here, MM's testimony was admissible. Rule 404(b) permits the admission of extraneous conduct for numerous purposes, including rebuttal of defensive theories presented in opening statements. Tex. R. Evid. 404(b)(2); *Valadez v. State*, 663 S.W.3d 133, 141 (Tex. Crim. App. 2022); *Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016); *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

The trial court accepted the State's proffer of extraneous conduct evidence in a hearing outside the jury's presence, but held off on hearing any arguments regarding Rule 404(b) until later. 3 RR 21. This suggests that the trial court believed the evidence may be admissible for rebuttal, since that basis would require analysis of the opening statements and cross-examinations, neither of which had occurred yet at this point in the trial. *See Dabney*, 492 S.W.3d at 317; *De La Paz*, 279 S.W.3d at 343; *Fisher v. State*, No. 05-19-00851-CR, 2022 WL 2900968, at *8 (Tex. App.—Dallas July 22, 2022, pet. ref'd) (mem. op., not designated for publication). Indeed, MM's testimony would have been admissible to rebut the portion of the defensive theory that claimed NM's and DS's outcries were fabricated for Mother to get custody of NM. *See* 3 RR 40-41. After all, MM's claims were separate from NM's and DS's, so their existence would rebut the notion that the children fabricated

44

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

claims to assist Mother with a custody dispute. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (extraneous offense admissible to rebut fabrication).

Appellant argues that the MM's testimony was inadmissible because it differed from the anticipated testimony described in the notice, meaning the State failed to satisfy Rule 404(b)'s notice requirement. Appellant's Br. 31. But extraneous conduct offered for rebuttal purposes under Rule 404(b) is exempt from the notice requirement. *See Dabney*, 492 S.W.3d at 317. As such, Appellant cannot show either that the evidence was inadmissible or that any objection would have been sustained.

## 2. The Record is Silent Regarding Trial Counsel's Strategy

Even if the testimony were inadmissible, permitting inadmissible testimony without objection can be a strategic move that is part of a sound trial strategy. *Stafford v. State*, 813 S.W.2d 503, 508 (Tex. Crim. App. 1991). The record is silent on why he permitted MM to testify without objection, so this Court cannot speculate on counsel's motives. *See Thompson*, 9 S.W.3d at 814. But it is clear from the record that the decision was strategic—it was not an oversight.

A silent record ordinarily cannot defeat the strong presumption of effective assistance of counsel. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App.

45

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

2007); *Thompson*, 9 S.W.3d at 813-14. In the absence of direct evidence of trial counsel's reasons for the challenged conduct, this Court will assume a strategic motivation if any can be imagined. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Unless trial counsel has had an opportunity to explain his decisions, the challenged conduct must be "so outrageous that no competent attorney would have engaged in it" for this Court to find deficient performance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Here, the record is silent as to why trial counsel allowed MM to testify without objection. But the record demonstrates that he did not simply fail to object—rather, the decision to permit MM's testimony appears intentional. Trial counsel spent a considerable portion of his opening statement telling the jury about MM's outcry, arguing that MM fabricated her allegations in an effort to get away from her mother Amanda and Appellant's family. 3 RR 41-42. Specifically, he stated:

> Now, at that same time those things I just described to you are happening, there's another storm. There's another storm brewing in this house, and that involves [MM]. You guys are going to hear from [MM]. She is Amanda's daughter. I'm going to tell you, she hates her mom so much.
>
> Her mom also has problems, problems with drugs, problems with alcohol, problems with the people she associated with and let into her house. So there were different points where Amanda and [MM], they would live with [Appellant]. Then they had their own place just down

46

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

the street. Then [MM] would get removed from the home, back and forth. Sometimes she would be living with her dad, be living with her mom, be living with grandpa, be living with different people.

But one thing was crystal clear the entire time: [MM] wanted out of that house. She wanted away from Amanda. She wanted away from the Munos family. And you're going to hear that she's been making up allegations to try to accomplish that for years. You're going to hear some of those are probably true from the physical abuse, things that happened when she was younger, some of the things that happened with her mother's drug use. Those were true and those were problems.

But she kept getting re-placed with her mom because her mom would get clean. Her mom would demonstrate to CPS that she could give care for this child again.

And for [MM], things would kind of intensify, every time she would make an allegation, it would build, it would be like a snowball, keep increasing. At some point she has to get removed. Right? At some point she has to -- this has to end.

And just like [NM], [Mother], [MM] got what she wanted after these allegations. She went to live with her father. She has not had to live with Amanda since.

*Id.* As seen in the above quote, Appellant's trial counsel told the jury in his opening statement that they were "going to hear from MM." *See id.* So it is reasonable to infer from the record that permitting her testimony without objection was not an oversight—it was intentional.

When cross-examining MM, trial counsel built on his opening-statement claim that she fabricated her allegation to get away from Appellant's family. 4 RR

47

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

61 (MM did not like her mother and wanted to live with someone else), 63-64 (MM wanted to get away from Appellant's family), 73 (allegation resulted in removal from the family). He sought to discredit her. *Id*. at 65 (her mother believed she was a liar), 71 (suggesting her story changed since her first forensic interview). And he used the fact that MM brought a handwritten note to her 2023 forensic interview to imply that she had a nefarious agenda. *Id*. at 66-67, 69-70. This further suggests that permitting her to testify without objection was intentional and strategic.

Appellant argues that objections to extraneous conduct testimony are "standard practice." Appellant's Br. 31-32. But he offers no legal authority for this claim, or for the implied notion that deviation from this alleged "standard practice" satisfies *Strickland* as a matter of law. *See id*. Instead, he merely asserts the conclusory claim that "the record supports that [trial counsel] was not functioning as the counsel Appellant is guaranteed under the Sixth Amendment." *Id*. at 32.

Based on the record, Appellant cannot show that there was no plausible professional reason for trial counsel to permit MM to testify without objection. *See Stafford*, 813 S.W.2d at 508 (permitting testimony can be strategic). As such the record does not firmly demonstrate performance below an objective standard of reasonableness. *See Johnson v. State*, 624 S.W.3d 579, 585 (Tex. Crim. App. 2021).

48

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

Accordingly, Appellant cannot rebut the presumption of competent representation and satisfy the first prong of *Strickland*.

## Appellant Cannot Demonstrate Prejudice

Even if trial counsel's representation were deficient, Appellant cannot satisfy the second prong of *Strickland* by demonstrating prejudice. *Strickland*, 466 U.S. at 694. Deficient performance is prejudicial when there is a reasonable probability (i.e. "sufficient to undermine confidence in the outcome") that, but for the lawyer's errors, the proceeding would have ended differently. *Compton*, 666 S.W.3d at 714.

Here, there is no reasonable probability that, but for MM's testimony, the outcome would have been different. Initially, any prejudice in admitting an extraneous act is limited when the extraneous conduct is not as egregious as the charged conduct. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd). MM testified that Appellant licked and kissed her on her hand and ear. 3 RR 251-55. This conduct would have only constituted the Class C misdemeanor of assault offensive contact at the time of the occurrence.[7] *See* Tex. Penal Code § 22.01(a)(3).

---

[7] Under a more recent statute, the conduct may constitute a Class A Misdemeanor Indecent Assault. *See* Tex. Penal Code § 22.012(a)(4). This is still far less egregious than the charged conduct.

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

A single instance of a misdemeanor assault is significantly less egregious than any of the charged offenses. Accordingly, any prejudice would be minimal at the outset. *See Robisheaux*, 483 S.W.3d at 220.

Further, the trial court gave the jury a limiting instruction, stating:

The defendant is on trial solely on the charge contained in the indictment. In reference to evidence, if any, that the defendant has previously participated in recent transactions or acts, other than but similar to that which is charged in the indictment in this case, you are instructed that you cannot consider such other transactions or acts, if any, for any purpose unless you find and believe beyond a reasonable doubt that the defendant participated in such transactions or committed such acts, if any. Even then, you cannot convict the defendant solely because you believe he committed similar acts, other than the ones for which he is on trial.

You are instructed that if there is any testimony before you in this case regarding the defendant having committed offenses other than the offenses alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident or, but to rebut a defense theory, if any, in connection with the offense alleged against him in the indictment in this case, and for no other purpose.

5 RR 42-43. The jury presumptively followed these instructions. *Garcia v. State*, 614 S.W.3d 749, 757 (Tex. Crim. App. 2019); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). A jury instruction from the trial court minimizes the risk

50

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

that a jury may make an impermissible inference from extraneous conduct. *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). Appellant does not rebut the presumption that the jury followed the trial court's instruction. Appellant does not demonstrate that the outcome would have been different absent MM's testimony. As such, he does not show prejudice and has not met the second prong of *Strickland*.

MM's testimony was admissible as rebuttal evidence. Even if her testimony were not admissible, the record is silent on trial counsel's exact reason for letting MM testify without objection. But it is clear from the record that his decision was not an oversight—it was intentional and strategic. Accordingly, Appellant cannot show deficient performance to satisfy the first prong of *Strickland*.

The extraneous matters were far less egregious than the charged conduct and the trial court provided a limiting instruction. Thus, Appellant cannot show a reasonable probability that MM's testimony affected the trial's outcome—meaning he cannot show prejudice to satisfy the second prong of *Strickland*.

For these reasons, this Court should overrule Appellant's fourth issue and affirm the trial court's judgments in all three cases.

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

**V. The denial of a mistrial was within the zone of reasonable disagreement because Appellant failed to demonstrate a discovery violation.**

In his fifth issue, Appellant argues that the trial court erred by denying a mistrial when the State was unable to produce written notes that MM took with her to her forensic interview. Appellant's Br. 32-33. Appellant failed to preserve his issue with a timely objection. He failed to develop a record sufficient for this Court to determine whether there was a discovery violation. He failed to demonstrate a discovery violation to the trial court. And he failed to demonstrate the incurable prejudice necessary to justify a mistrial.

### Additional Facts

When MM underwent her second forensic interview, she took a handwritten note with her to ensure that she covered everything that she wanted to disclose. 4 RR 64, 66-67, 69-70. The forensic interviewer read this note aloud on recording of the forensic interview. *Id*. at 124. Forensic interview supervisor McKenzie McIntosh interviewed NM and reviewed recordings of DS's and MM's interviews. *Id*. at 22. Appellant asked to review the note prior to trial. *Id*. at 123-24.

Appellant tried to use the note in a Rule 702 hearing to exclude Ms. McIntosh's testimony, alleging that allowing MM to bring the note violated standard protocol. *Id*. at 35-43. He then cross-examined MM regarding both the note's

52

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

existence and content before the jury. *Id*. at 66-70. He also cross-examined Ms. McIntosh about the note as well. *Id*. at 112-13.

After the State rested its case-in-chief, and the trial court denied multiple directed verdict motions, Appellant requested a mistrial claiming that the State had a duty to provide a copy of MM's note to the defense. *Id*. at 123-24. The State responded that the contents were disclosed via the audio recording of the forensic interviewer reading the note aloud. *Id*. at 124. The State also responded that the note is not in the State's possession: having checked with the investigating agency and the Children's Advocacy Center. *Id*. at 124-26. MM also no longer had the note. *Id*. at 64, 127-28. Appellant claimed that the State had an "affirmative duty" to successfully track down the note and produce it for his inspection. *See id*. at 125. He also argued that "[t]here's no way to know whether it was read accurately into— on video by the forensic interviewer." *Id*. The trial court denied Appellant's request for a mistrial. *Id*. at 128.

## Standard of Review and Applicable Law – Mistrial

This Court reviews a trial court's denial of a motion for mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). This Court views the evidence in the light most favorable to the trial court's ruling,

53

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

considers only the arguments before the trial court at the time of the ruling, and will uphold the ruling if it falls within the zone of reasonable disagreement. *Id*. This Court may not "substitute its judgment for that of the trial court, but rather must decide whether the trial court's decision was arbitrary or unreasonable." *State v. Gonzalez*, 855 S.W.2d 692, 695 n.4 (Tex. Crim. App. 1993).

A mistrial halts proceedings when error is so prejudicial that further expenditure of time and expense would be wasteful and futile. *Hallman v. State*, --- S.W.3d ---, No. PD-0332-22, 2025 WL 1812902, at *5 (Tex. Crim. App. 2025) (not yet published). So a trial court may declare a mistrial "if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error." *Id*. Whether an error justifies a mistrial depends on "the peculiar facts and circumstances of each case." *Id*. Mistrial is only necessary in extreme circumstances where the prejudice is incurable. *Id*.

## Applicable Law – Discovery

Under Texas law, on the defendant's request, the State must *produce* and *permit the inspection/duplication* of any relevant *inculpatory* evidence in the State's possession as soon as is practicable. *See* Tex. Code Crim. Pro. art. 39.14(a); *Watkins*

54

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

*v. State*, 619 S.W.3d 265, 277-78 (Tex. Crim. App. 2021).  If the State fails to comply with this requirement, the trial court has discretion to exclude the evidence.  *State v. Heath*, 696 S.W.3d 677, 709 (Tex. Crim. App. 2024).  The State must *disclose* any *exculpatory*, *mitigating*, or *impeaching* information or evidence regardless of whether the defense has made any request.  Tex. Code Crim. Pro. art. 39.14(h).  If the State fails to comply with this free-standing duty, the remedy may include a new trial if the omission causes sufficient harm.  *Hallman*, 2025 WL 1812902 at *15.  The State presents the following table to illustrate key differences between paragraphs (a) and (h) of Article 39.14:

|  | Article 39.14(a) | Article 39.14(h) |
|---|---|---|
| **What is Discoverable** | Evidence in the State's Possession | Evidence or Information in the State's Possession |
| **Character Rendering Discoverability** | Inculpatory (Does Not Tend to Negate Guilt or Mitigate Punishment) | Exculpatory, Mitigating, Impeaching, Tends to Negate Guilt or Reduce Punishment |
| **Triggering Requirement** | Defense Request | Free-Standing |
| **Action Required of the State** | Produce and Permit Inspection and Electronic Duplication/ Copying of the Evidence | Disclosure |
| **Timeframe** | As Soon as Practicable After Receiving a Timely Request | None |
| **Remedy For Violation** | Trial Court's Discretion Up To Exclusion | Trial Court's Discretion Up To Mistrial |

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

*See* Tex. Code Crim. Pro. arts. 39.14(a) & (h); *Heath*, 696 S.W.3d at 703-08; *Watkins*, 619 S.W.3d at 277-78; *see also Hallman*, 2025 WL 1812902, at \*15 (trial court has discretion to deny mistrial for paragraph (h) violation if omission has no substantial or injurious effect).

## Appellant Failed to Preserve the Issue

As an initial matter, Appellant has forfeited any complaint about article 39.14 by failing to make a timely objection. Article 39.14 complaints are subject to preservation requirements. *Glover v. State*, 496 S.W.3d 812, 816 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Finley v. State*, No. 05-23-00420-CR, 2024 WL 4969955, at \*4 (Tex. App.—Dallas Dec. 4, 2024, no pet.) (mem op., not designated for publication). A party must make a complaint as soon as the grounds become apparent—as soon as the defense knows or should know that an error has occurred. *Foyt v. State*, 602 S.W.3d 23, 49–50 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). Even prior to the Michael Morton Act, defendants were required to raise any *Brady* complaints as soon as the grounds for the complaint became apparent. *See Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

Here Appellant did not object when he first learned about MM's note, which ostensibly occurred when he reviewed the forensic interview recording. *See* 4 RR

56

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

124. He requested the note before trial. *See Id.* at 123-24. But he did not object before or during the State's case-in-chief about the absence of the note. Indeed, he confronted Ms. McIntosh about it when trying to exclude her testimony in a Rule 702 hearing. 4 RR 35-39, 43-44, 52. He then cross-examined MM about it, and even relied on some of the note's contents during cross-examination. *Id.* at 64, 69-70. He later used it to cross-examine Ms. McIntosh before the jury. *Id.* at 112-13. He did not raise his complaint to the trial court until after the State had rested. *Id.* at 123. By failing to raise his objection in a timely manner, Appellant forfeited any complaint about article 39.14. *See Ruiz v. State*, Nos. 14-23-00857-CR & 14-23-00859-CR, 2025 WL 1634787, at *9-10 (Tex. App.—Houston [14th Dist.] June 10, 2025, no pet. h.) (mem op., not designated for publication) (Michael Morton complaint forfeited when appellant did not raise it until day after State introduced the evidence). Accordingly, this Court should overrule Appellant's fifth issue as unpreserved.

## Appellant Failed to Develop a Record Sufficient for Review

Additionally, it is not possible for this Court to review Appellant's claims because he failed to develop a sufficient record to show whether there was an Article 39.14 violation. That is, Appellant failed to include the content of the note (as read

57

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

on the recording) into the appellate record. An appellant bears the burden of developing a sufficient record in the trial court to resolve any issues presented. *London v. State*, 490 S.W.3d 503, 508 (Tex. Crim. App. 2016).

Here, MM's note was lost, but the forensic interviewer read the note during the forensic interview recording. 4 RR 124. Appellant speculates (as he did before the trial court) that the forensic interviewer may not have read the note in its entirety and some unread portion may contain exculpatory, mitigating, or impeaching information. *Id*. at 125; Appellant's Br. 33. But he did not develop the record to substantiate or refute this speculation. Appellant did not admit the recording or proffer the note's contents (as read in the recording), so this Court does not know the note's contents and therefore cannot determine if anything falls under Article 39.14(h) or if the interviewer's reading seemed incomplete. Appellant did not ask MM whether the interviewer's reading was incomplete. *See* 4 RR 62-73. Appellant did not call the interviewer to testify on the recording's completeness.

In short, Appellant presents nothing for this Court to review because the note's contents are not in the appellate record.[8] He speculates that MM's note may have

[8] The only contents that can be gleaned from the record are the portions that Appellant challenged MM with in cross-examination: her mother's drug use, NM's father's alcoholism, concerns about the physical safety of the children still in the house, and an allegation that both Appellant and NM's father were abusing one of the other children. 4 RR 67.

58

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

contained discoverable information, but he made no effort to ensure that this Court could determine from the record whether that speculation has any merit. So the record is insufficient for this Court to make such a determination. Accordingly, this Court should overrule his fifth issue and affirm the trial court's judgment in all three cases.

**The Trial Court Did Not Err Because There Was No Discovery Violation**

Even if the issue were preserved and the record were properly developed, the trial court's denial of the mistrial was easily within the zone of reasonable disagreement. If the State had failed to produce any requested evidence in its possession for inspection, the trial court would have been free to exclude such evidence. *Heath*, 696 S.W.3d at 709. If the State failed to disclose any exculpatory, mitigating, or impeaching evidence or information in its possession, then a mistrial may have been appropriate if the omission was harmful. *Hallman*, 2025 WL 1812902 at *15. But Appellant was unable to demonstrate either to the trial court.

*1. The Note Was Not in the State's Possession*

Initially, Appellant failed to show that the evidence he sought was even in the State's possession. Evidence must be in the State's possession for either paragraph (a) or (h) to impose a discovery requirement. Tex. Code Crim. Pro. art. 39.14(a) &

59

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

(h). If evidence is not in the State's possession because it has been lost or destroyed, then a mistrial or dismissal is justified only if: (a) it was *actually* exculpatory; or (b) it was *potentially* exculpatory *and* the defendant proves the State lost the evidence in bad faith. *Guzman v. State*, 539 S.W.3d 394, 401 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Estraca v. State*, No. 13-23-00482-CR, 2025 WL 339173, at *6 (Tex. App.—Corpus Christi Jan. 30, 2025, no pet.) (mem. op., not designated for publication).

Here, neither the prosecutor, investigating agency, nor the Children's Advocacy Center had MM's note. 4 RR 126-27. Neither did MM. *Id*. at 64, 127-28. Appellant cannot show that it was actually exculpatory, and he made no effort to show any bad faith in the note's loss. Moreover, the State negated any notion of bad faith by outlining its efforts to find the note to the trial court. *Id*. at 125-28. Accordingly, the State's inability to produce the note would not justify a mistrial or dismissal. *Guzman*, 539 S.W.3d at 401; *Estraca*, 2025 WL 339173 at *6.

### 2. The State Disclosed the Discoverable Information in Accordance with 39.14(h)

Additionally, the State fulfilled its discovery duties. The existence of the note itself was discoverable information under Article 39.14(h) because the mere fact that MM brought a note to the interview could be used to impeach both MM and Ms.

60

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

McIntosh.  *See* Tex. Code Crim. Pro. art. 39.14(h).  Under Article 39.14(h), the State could fulfill its discovery requirements by *disclosing* this to Appellant.  *See id*.  And the State did just that.  The State disclosed the note's existence and the note's contents (as contained on the recording) to Appellant, and he used it to impeach both MM and Ms. McIntosh.  4 RR 66-70, 112-13.  So there was no discovery violation.

Appellant's argument to the trial court erroneously blended portions of paragraphs (a) and (h) of Article 39.14 in an effort to render the State's disclosure inadequate.  He essentially argued that the State needed to permit his inspection of MM's note per paragraph (a) on the basis that it *may* contain discoverable information under paragraph (h).  *See* 4 RR 124.[9]  This argument did not comport with the statute.  If there was exculpatory, mitigating, or impeaching evidence, then mere disclosure would suffice.  *See* Tex. Code Crim. Pro. art. 39.14(h).  The State would not need to permit inspection unless it intended to offer the evidence for admission.  *See id*. at 39.14(a).  Accordingly, he failed to demonstrate an error.

---

[9] Appellant also claimed that the State had "an affirmative duty to seek out and get" the missing note under *Heath*.  4 RR 125.  But the "affirmative duty" language he cherry-picked from *Heath* was part of the Court's analysis of the phrase "as soon as practicable" in paragraph (a).  *Heath*, 696 S.W.3d at 701.  The actual language in the case was "*once a discovery item is requested*, the State now has an *affirmative duty* to search for the item and produce it to the defendant in a timely manner."  *Id*. (emphasis added).  This section of *Heath* is wholly inapplicable to an analysis of paragraph (h) because paragraph (h) does not contain the "once a discovery item is requested" language.  *See* Tex. Code Crim. Pro. art. 39.14(h).

61

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

For a mistrial to be appropriate, there needs to be: (1) an error; and (2) incurable prejudice. *See Ocon*, 284 S.W.3d at 884. Appellant failed to demonstrate either to the trial court. Without an error, there is nothing upon which to base a mistrial. *See id.* (mistrial appropriate for incurable errors). And without sufficient harm, a mistrial would be inappropriate even if there had been a discovery violation. *Hallman*, 2025 WL 1812902 at \*15. Accordingly, the trial court was well within the zone of reasonable disagreement when it denied his mistrial request.

## Appellant's Argument is Meritless

Appellant now reasserts his trial court arguments on appeal. Appellant's Br. 33. As he did before the trial court, Appellant speculates that MM's note may have contained discoverable information. *Id.* But the record is not sufficiently developed to support this speculation.

As he did before the trial court, Appellant claims that mere disclosure is not sufficient, and he was entitled to physical inspection of the note MM brought to her forensic interview. *Id.* This argument fails because physical inspection is only required under paragraph (a) for admissibility, whereas mere disclosure satisfies paragraph (h). *See* Tex. Code Crim. Pro. art. 39.14(a) & (h); *see also Heath*, 696 S.W.3d at 709.

62

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

As he did before the trial court, Appellant cherry-picks the "affirmative duty" language from *Heath*—a case which analyzed paragraph (a)—in an effort to fabricate a violation of paragraph (h). Appellant's Br. 33. This argument fails because statutory language at issue in *Heath* does not exist in paragraph (h).

Finally, in his arguments to the trial court, Appellant made no effort to demonstrate the "incurable" prejudice necessary to justify a mistrial. 4 RR 124-27; *see also Hallman*, 2025 WL 1812902 at *5 (mistrial denied when 39.14 violation caused no substantial harm). Appellate review of a mistrial decision is limited to the arguments presented at the trial court. *Ocon*, 284 S.W.3d at 884. So Appellant has no argument to present here regarding harm or prejudice. *Id*. Instead, Appellant merely reiterates his speculation that there may have been some exculpatory information in MM's note. Appellant's Br. 33. A mistrial requires error and incurable prejudice, not speculation that there might have been an error with no showing of prejudice.

For all of these reasons, this Court should overrule Appellant's fifth issue and affirm the trial court's judgments in all three cases.

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

## Prayer

Appellant's trial was without harmful error.

WHEREFORE PREMISES CONSIDERED, the State respectfully requests that this Court overrule Appellant's issues and affirm the trial court's judgments in all three cases.

Dated: August 20, 2025.

Respectfully submitted,

GREG WILLIS
Criminal District Attorney
Collin County, Texas

AMY MURPHY
Assistant Criminal District Attorney
Chief – Appellate Division

ROBERT LINUS KOEHL
State Bar No. 24097948
Assistant Criminal District Attorney
Appellate Division
Collin County, Texas
2100 Bloomdale Rd, Ste. 200,
McKinney, Texas 75071
972-548-3804
rkoehl@co.collin.tx.us

64

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

## Certificate of Service

The State has e-served Lara Bracamonte Davila, counsel for the Appellant, through the eFileTexas.gov filing system on the 20th day of August, 2025.

ROBERT KOEHL
State Bar No. 24097948
Assistant Criminal District Attorney
Collin County, Texas

## Certificate of Compliance

This brief complies with the word limitations in Tex. R. App. P. 9.4(i)(2). In reliance on the word count provided by the computer program used to draft this brief, the undersigned attorney certifies that this brief contains 11,701 words.

ROBERT KOEHL
Assistant Criminal District Attorney
Collin County, Texas
State Bar No. 24097948

*Cause Nos. 05-24-01220-CR through 05-24-01222-CR; Balentine Munos v. State of Texas; In the 5th Court of Appeals, State of Texas*

*STATE'S BRIEF*

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Robert Koehl
Bar No. 24097948
rkoehl@co.collin.tx.us
Envelope ID: 104634637
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: State's Brief
Status as of 8/20/2025 3:53 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lara Bracamonte Davila | 24051662 | bracamontelaw@gmail.com | 8/20/2025 3:47:00 PM | SENT |
| Robert Koehl | 24097948 | rkoehl@co.collin.tx.us | 8/20/2025 3:47:00 PM | SENT |
| Megan Parker | | megan.bracamontelaw@gmail.com | 8/20/2025 3:47:00 PM | SENT |
| DA Appeals | | DAappeals@co.collin.tx.us | 8/20/2025 3:47:00 PM | SENT |